The Arctic Cat, Inc. v. Arctic Cat, Inc.  I call now to your argument in the second appeal of the day. This is Appeal No. 17-1873, Polaris Industries, Inc. v. Arctic Cat, Inc. Mr. Vandenberg, whenever you're ready. Thank you, Your Honors. Judge Brewery, may it please the Court. This is one of the unusual cases where the claims of a patent were found obvious, even though they recite a limitation shown nowhere in the prior art. This is the case of Polaris's 719 patent recites a vehicle, and it includes various drive and suspension components. Then it concludes with a limitation reciting a sway bar that is attached to the suspension and is also attached to the frame at a location that's forward of the engine. During the original prosecution, the claims were allowed over the prior art, then before the examiner, because of that limitation, because it wasn't shown anywhere in the prior art. Was Dan Garthier in the original prosecution? It was not, but as we pointed out in our brief, there was another reference that showed essentially the same thing that they're relying on in this case for Dan Garthier. The important thing is Dan Garthier doesn't show the missing limitation either. Obviously, Arctic and its expert had a strong motivation to try to fill that gap and find the missing limitation, and they still didn't conform with anything. Here we are on appeal with arguing about obviousness of a limitation shown nowhere in the prior art. What if hypothetically there's a primary reference that teaches every single limitation of the claims except the sway bar and where the sway bar is located, but there is a motivation to have a sway bar inserted into that primary reference? Let's say there's only two locations where you would put that sway bar. Would it be obvious to attach that sway bar in either of those positions? This is a situation that really courts have never addressed, because we talk a lot about the limited number of options, but it's always in the context of a non-missing limitation case. In this case where you say, we're assuming it's a missing limitation. I'm basically taking away from you the idea that it wouldn't be obvious or one wouldn't be motivated to add a sway bar to the primary reference. That's in. Now we have to figure out where would one of ordinary skill in the art attach it and locate it. Now I'm asking you, what if in my hypothetical there are really only two places to put it? Why wouldn't it be that either of those two locations would be an obvious choice? Because at that point we are using our knowledge of the invention to conclude that there are only two possible places. The fact that that one isn't shown indicates that people aren't even thinking in that mindset of there's only a limited number of places. The other thing about that, your honor, is that that is not a fact situation. You're pushing back on the hypothetical a little bit. I was going to start pushing. The hypothetical was there are only two places. If there are only two places, then the question would be, wouldn't either of those two places be an obvious place to put the sway bar? In that hypothetical. In that hypothetical, and I feel like I need to say incomplete hypothetical, I need more facts. I think in that situation, if you didn't use hindsight to get to that point, then I think you'd have a pretty strong obviousness case. Our point is that you don't even get to the point of asking that sort of a question without using first using hindsight. Can I ask you, is there any evidence, I didn't see any evidence in the record, because we're not looking at secondary considerations. Is there evidence that it really was unexpected to put the sway bar in front of the engine? There was evidence, of course, of commercial success. We have not appealed on that issue. The board went against us, but we have really, based on our appeal, on the fact that they don't have prior art showing that location. There's lots of prior art. Many, many examples of sway bars in the record. Dozens in the record, probably hundreds that aren't in the record. None of them show this limitation. The fact that there's all these references showing sway bars in other locations supports our point that they were, first of all, picking and choosing just to get to Dongathie, which still doesn't show the limitation, but that's one level of hindsight. Then, even when they get to Dongathie, they need to do more picking and choosing. Dongathie has five embodiments. Two of them aren't even attached to the frame. Just so we all remember, the claims don't just require a location of the sway bar. They require a location of attachment of the sway bar to the frame. That's the independent claims two, four, and six. No, I'm sorry, Your Honor. The independent claim one requires that you be coupled to the frame at a location forward of the engine. It's attachment, not just location. That's important because in two of Dongathie's embodiments, he doesn't even attach his sway bar to the frame. Again, they're picking and choosing. They know what reference they want to go to because they know the invention. Then, they select the three embodiments that serve their purposes, while ignoring the two that don't. You do agree that Dongathie does have an embodiment in which it's forward, in which the sway bar is forward? No, Your Honor. We do not. Not attached to the frame forward of the engine. Your view is that because you don't know what that open space is being used for, you can't imply or understand that there could be an engine there? I'd say two things in response to that, Your Honor. One is, I think reading that reference, especially the one embodiment that's got a forward running shaft, as you'd say, the engine's up front somewhere. This point of, well, maybe you could fit an engine there. I submit, Your Honors, first of all, we're speculating. We don't know the size of those components. There's a case law of this court that says that drawings aren't to scale. We're looking at an off-axis angle where it's tough to tell the relative locations of anything. We're speculating when we talk about the size, but more importantly, we're asking ourselves a hindsight question. You don't ask yourself, hey, I wonder if that space right there could fit an engine, unless you already know what our invention is and you're trying to establish whether it's obvious. The obviousness analysis requires you to know nothing about the invention, pick up Dongathie, and just read it. I submit to Your Honors that nobody, just doing that without knowledge of our invention, would even start thinking about whether or not that space is big enough to hold an engine. At least doesn't Dongathie's figure illustrate locating the sway bar at or near where the radius arms are coupled to the frame? If you look at that picture, that's what it's illustrating. Again, if you know what to look for, you can conclude that in some of the embodiments, he's attaching the radius arm and the sway bar at a location that's generally coplanar with one another. But it's only by looking at the figures and only if you know what you're looking for. They always talk about these as teachings. This court uses the word teachings a lot in its opinions. I'm pretty confident that whenever it's used by this court, it's used to talk about what the reference talks about. In a mechanical invention like this, where you've got a figure that shows the relative location of the components, does that figure have more of a disclosure than other kinds of inventions? Maybe something less structural, if you will? I think we need to draw the distinction between anticipation and obviousness. We certainly would not dispute that if you're talking about anticipation, does this disclose certain features? The figures are as fair game as anything else. If it's there, it's there for anticipation purposes. But obviousness is not the same. Obviousness is we're going to do something that hasn't been done before, and we're trying to decide why somebody would be motivated to do that. At that point, there is a critical difference between the words and the pictures. The words tell you what's important. They tell you what to look for. The drawings don't do that. Unless you know what you're looking for, you end up focusing on things that would never jump out at somebody. Is there a case that you know of that makes this interesting distinction between 102 and 103, and the text versus the figures? Your Honor, I think the closest case that has been cited on this point was cited by us, and it's actually the Supreme Court's diamond rubber case. More than 100 years ago, it was dealing with obviousness. They claim it wasn't. It was. It dealt with exactly this scenario, where there was nothing talked about in the reference, but the challenger was able to find in the figures. It was actually in the same pad. They were pointing to one embodiment and saying, well, look, you can see part of the invention over here, and look, you can see part of the invention over there. If you take those two things and put it together, you end up with the claimed invention. The Supreme Court said no. They said just essentially, and I'm paraphrasing at this point, but incidentally shown features in the drawings that are not important, aren't talked about in the specification, do not establish obviousness. You're into your rebuttal time. Do you want to save it? I do. Thank you. All right. Let's hear from Mr. Herridges. Did I pronounce that correctly? Herriges, Your Honor. Herriges. Okay. You have 15 minutes. Morning, Your Honors, and may it please the Court. There is no missing limitation doctrine of the time that Polaris is advocating in this case, and any such doctrine tends to run counter to the case-by-case analysis that this Court employs, and that the KSR Court emphasized should be undertaken in an obviousness analysis. And the cases that Polaris cites on this issue are limited to single reference obviousness cases, finding faults with decisions that fill gaps in the prior art with common sense alone, without any kind of evidence or reasoned analysis. And that's a far cry from what happened in this case. In this case, we would contend that there is no missing limitation in the sense that they're talking about it. I guess Mr. Vandenberg, at least this morning, was more focused on this idea of picking and choosing out of the various different illustrations in Dengarthier to come up with the limitation of, number one, having a sway bar located forward of the engine, and then number two, having the sway bar attached to the frame in a way that's still in front of the engine, but behind where the attachment of the radius arms are to the frame. And so in order to get all of that out of Dengarthier, you do have to do a little hunting and cobbling together of the different figures. And given that Dengarthier is silent about all of this, in his view, you're doing a bunch of hindsight hopscotch in order to get to the claimed invention. So what do you have to say about that? Well, what I have to say about that, Your Honor, is these are fact-based arguments that they made to the board. The board rejected them. Ultimately, what the board said is that what Dengarthier shows is, sure, there are different setback points, different ways in which to connect the radius arms to the frame and the sway bar to the frame. But what that shows is that these are all known locations. And we had known and obvious locations for mounting a sway bar in a radius arm suspension, like the Dengarthier patent, and ultimately, like the primary reference in Nokimoto, which has the same kind of suspension configuration as Dengarthier. Are you saying that almost any iteration of the different figures of Dengarthier is obvious?  You can pick and choose all the different configurations and they're all obvious. Maybe having a sway bar that's not connected to the frame. Maybe having it connected to the frame but be coplanar with the connection the radius arm has to the frame. Yes, Your Honor. I think that the number of disclosures in Dengarthier is not as broad as they might have you believe. There are sway bars that are coplanar and attach to the frame, sway bars that are rearward of the attachment point. And there's a suggestion for mounting them at different spaces. So we're only dealing with three or four different kinds of disclosures within Dengarthier. And I would submit that those were all known and they all had varying advantages, which our expert testified to and which the board ultimately adopted. Well, why doesn't that run into the diamond case that Mr. Vandenberg was stressing? Well, I don't think that that case stands for that proposition. And the emphasis that I heard this morning was that Dengarthier doesn't textually describe any sort of benefits with these varying configurations. And I think we would take issue with that from two points. And that is, first, that Dengarthier does textually describe that the benefits of being to achieve what the user might want vary these suspension points. And the second point I would make is that KSR... Can I ask you just... Yes, sure. I'm going to interrupt you for a minute. But does Dengarthier talk about why you would want to have that sway bar in the particular location that it has it in figure two? It does not talk specifically about why you would want that configuration, no, Your Honor. It simply says that these varying configurations can be used to reach the user's end and can be designed to accommodate whatever needs the user... It's just more general. It's not saying why any one specific configuration is better than the other. No, other than to say that they all provide these stability benefits that would have motivated one of skill to implement it. Okay. You were about to give the second point. Pardon, Your Honor? You were about to give the second point. I was. My second point, Your Honor, is that KSR itself says that an overemphasis on the importance of explicit content of issued patents is counter to the sort of case-by-case and holistic obvious analysis that the court is to employ. And so I think that they are being more demanding, CLARIS is being more demanding than the law requires in terms of an explicit motivation being present and written in the patent itself. The reason we don't think this is a missing limitation case, Your Honors, is that their references individually and alone in saying Dengueffier doesn't teach a sway bar in front of an engine because it doesn't show an engine. And then Okimoto doesn't show a sway bar, and therefore neither one of those teaches the entirety of that claim. Has there ever been, in the prior art, a sway bar disclosed for the rear suspension when there's also a rear engine? Not in the record, Your Honor. What our contention before the board was. So there is no anticipatory reference here. I mean, there could be other elements that are missing from such a prior art reference. I'm just trying to figure out right now, was this the first time that there was a rear sway bar and a rear engine? Yeah, there's no reference in the record that shows that limitation. Denny, maybe? While Denny shows the reference, it doesn't explicitly show where the engine is. One could read Denny to be mounted forward of that engine compartment, but it's not as clean as perhaps we would have to say that it's explicitly disclosed there. Why wouldn't the most logical location of the sway bar, if it's obvious, in fact, to modify on Okimoto with a sway bar, to just have the sway bar located rear of the engine much closer along the rear axle? Well, so two points on that, Your Honor. I think that- Instead of stretching that sway bar and wrapping it all the way around the engine. Well, so you're not actually wrapping it around the engine. In the proposed combination, it would be a straight shot through. So you'd have- It's a U-shaped bar, isn't it? It is. And so it would be U-shaped on the rear as well. That's typically the way that these are implemented. There are different configurations where they're straight. That's why I'm saying it's getting wrapped around the engine. I see. Well, the reason you would want to do that, and this came up and the board addressed it. Well, first things first, you could mount it rearward, and we do think that would be another obvious location. But we don't think that negates obviousness here. And there are, in fact, specific reasons you would want to keep it forward of the engine near the pivot points of the radius arm, which is where Dengas, the AT, used to put it. In addition to the general benefits, what that does, mounting it forward of the engine near those pivot points, that reduces the amount of strain on the sway bar as those radius arms are moving. Because as you move towards the back, there's more movement. But as you're up front, at the pivot point of the radius arm, there's less strain placed on the sway bar. Where in the record is that rationale? Yeah, so that rationale, the opinion addresses that at pages 28 and 30. And that's appendix 28 and 30. Dr. Davis talks about the mounting location in his opening report at paragraphs 41 and 106, and his reply report at paragraphs 10 through 12. And he doesn't cite any particular, you know, other prior art or any articles or other sources for that rationale in his expert report. It's just based on his experience. Is that right? That is based on his experience, and it's based on Dengas' disclosure as well. But Dengas mounts it forward like that, and that's the advantage that it provides. This portion of the board opinion, is this the part that's based on the theory that the Inokimoto frame is wider in the middle than it is towards the back? That was a portion of the board's analysis, and I would like to address that. Because there's obviously a big fight in the briefs over whether that's true or not. There's a counter argument when you look at the figures that maybe it's actually getting narrower as you get closer to the middle. And I don't think that's right, Your Honor. And I back up by saying I think the board's decision was broader than just saying Inokimoto. It was saying all train vehicles in general get narrower towards the back, so you'd be motivated to put it towards the front. But sticking specifically with Inokimoto, if you look at figure seven, which is a rear view of that vehicle, it has down bars four, which are very narrow. So Polaris' attorney, my colleague, says that there's actually another bar, 3A, that is broader. Right. I'd like you to... ...focus on the figures that are annotated by Polaris and explain to me why they don't show what they look like they show. I will, Your Honor. The figure annotated by Polaris in their reply brief... ...and it's figures three and six. Yeah, so they're relying on... In their reply brief, they rely on actually figure four. And there's that down bar 3A, if Your Honors are there. And that down bar 3A, they say, is at the rear of the frame and is actually wider than the down portion four, which we pointed to. But if you look at figures one and two, 3A is actually quite a bit forward of the rear of the frame, and it intersects the engine and transmission. So that's why we believe that that rationale supports us. But more broadly, I think when you're looking at these two references, even if you were to put aside that bending stress argument, what you have here is Inokimodo, which has its pivot points of its suspension forward of the engine. And you have Dangathier, which has the sway bar mounted at, in some cases, or very near that pivot point. One of ordinary skill who had been motivated to implement a sway bar, which it's not disputed here that you would be motivated to do. There's disputes about where and what kind of sway bar, but a sway bar in general had known motivations to implement it. And if you do that, you would be motivated to implement the configuration that Dangathier teaches. It's the same kind of suspension. They're both for rear wheel drive vehicles, and they both facilitate that sort of low center of gravity by opening up that engine compartment and allowing one of ordinary skill to mount that engine low in the frame. So even if the bending stress argument is put to the side, there's still a motivation to maintain what Dangathier teaches rather than re-engineering it when you implement it into Inokimodo. If your honors have any further questions, I'm happy to answer them. But otherwise, I'll see the remainder of my time. Okay, thank you. Your honors, in my opening presentation, we talked mostly about Dangathier, and I think that the court understands our position there of picking and choosing among embodiments. And then in fact, none of the embodiments actually show or teach a sway bar mounted to the frame forward of the engine. But we also need to look at what happens when you move it over to Inokimodo, because the reasoning there is just as the reason obscure based on things that they can obtain from studying the drawings, knowing what they're looking for, but that aren't actually talked about. Remember with Dangathier, the teaching we're trying to draw is aligning the attachment points of the radius arms and the sway bar. But that only matters if you go over to Inokimodo and say, well, Inokimodo says it's really important to have the radius arms attached forward of the engine. That's the connection they want to make. Well, what do you need to do to get to that? They in their briefs, they always show these figures side by side. They're not side by side. You have to go through different figures of Inokimodo. And if I could direct the court to the appendix pages, you have to start at 1155, which is figure five of Inokimodo. And you have to notice that this point 45A, where the radius arm is attached to the frame, is right in that junction between two frame elements. Okay, so you've got to get that in your head. Then you have to flip back two pages, three pages to 1152, go to figure two and say, well, look, it looks like in that figure, that same frame element we were talking about, element five, is just barely forward of the engine. So from that, if I go through that exercise, I can conclude that the radius arm is attached to the frame forward of the engine. That is a hindsight analysis. Nothing in the reference tells us to do that inspection. So not only do we have picking and choosing on the Dongathia side, we also have picking and choosing on the Inokimodo side. I guess the last point I want to make, I do want to talk briefly about claims two, four, and six. Because those are the ones that say, okay, now don't have these two elements aligned. Attach the sway bar in this window so that it's forward of the engine, but also rearward of the attachment point of the radius arms. If I could direct your honor's attention to one more page from the record, it's actually page 54 of our brief, because we annotate figure two of Inokimodo. What we show is the very narrow window. Once you've gone through that hindsight analysis, we show the very narrow window between where the radius arm is attached to the frame and the forward plane of the engine. So to meet dependent claims two, four, and six, you need to be right in that window. If you slide it a little farther back, you're under the engine. If you slide it a little farther forward, you don't meet that limitation of being rearward of the radius arm attachment point. There's no teaching in the prior art to put it right in that little window. It's only with hindsight that you end up putting it there. Your honor, ultimately, obviousness is a question of law for this court to decide de novo. In a case like this where there is a missing limitation from the prior art, this court can review the prior art itself and make an ultimate decision on obviousness and should, in fact, reverse the board because the evidence in this case does not justify holding an invention containing a feature shown nowhere in the prior art to hold that obvious. Thank you, your honor. Okay, thank you.